THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

UNITED STATES OF AMERICA,

CASE NO. CR99-0174-JCC

10

Plaintiff,

ORDER

11

v.

12

WAYNE MORRIS,

13

Defendant.

14

15     This matter comes before the Court on Defendant Wayne Morris's motion for

16 compassionate release (Dkt. No. 223). Having thoroughly considered the parties' briefing and

17 the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion

18 for the reasons explained herein.

19 **I.     BACKGROUND**

20     From late October 1998 through March 25, 1999, Morris participated in three armed bank

21 robberies that were primarily carried out by his brother, Everett Morris. (*See* Dkt. No. 231 at 7–

22 9.) The second robbery occurred on February 26, 1999. (*Id.* at 7.) At 3:30 p.m., Everett entered

23 the Gresham, Oregon branch of U.S. Bank carrying a pistol. (*Id.*) Everett pointed the pistol at the

24 teller and said, "Give me all your [expletive] money. Don't give me your tracker or I'll shoot

25 you." (*Id.*) After collecting the money, Everett fled the building to a waiting car driven by

26 Morris. (*Id.*)

ORDER
CR99-0174-JCC
PAGE - 1

1    The third robbery occurred on March 26, 1999. (*Id.* at 8.) At 4:50 p.m., Everett entered

2    the Richmond-Highlands branch of Key Bank in Shoreline, Washington. (*Id.*) Everett once again

3    carried a pistol, which he pointed at the four bank tellers. (*Id.*) Everett said, "Nobody [expletive]

4    move. I want all your money. Hurry up or I'll blow your head off." (*Id.*) Everett left the bank

5    with $36,367.00 and crossed the street to a parked, tan-colored vehicle. (*Id.*) Morris sat in the

6    driver's seat. (*Id.*)

7    King County Police deputies responded to the robbery immediately. (*Id.*) The deputies

8    observed a tan vehicle weaving in and out of traffic. (*Id.*) As a deputy pulled behind the vehicle,

9    Everett leaned out of his window and fired a shot into the air. (*Id.*) After Everett fired the shot, a

10   motorist moved out from between the deputy's and the brothers' vehicle. (*Id.*) Everett fired three

11   more shots directly at the deputy's vehicle. (*Id.*)

12   A high-speed chase during rush-hour traffic ensued. (*Id.*) At one point, the brothers'

13   vehicle approached an FBI vehicle. (*Id.*) Everett pointed a gun out of his window and shot at the

14   FBI vehicle twice. (*Id.*) At another point, a police vehicle approached the brothers' vehicle from

15   behind. (*Id.* at 9.) Everett leaned out of his window and fired several shots at the police vehicle.

16   (*Id.*) A police officer in that vehicle returned fire, hitting both Everett and Morris. (*Id.*)

17   Eventually, the brothers were taken into custody after their vehicle was brought to a halt on Pike

18   Street between 6th and 7th Avenue—more than 11 miles away from where the chase began. (*Id.*)

19   Although Morris never held or shot a weapon, prosecutors charged him with conspiracy

20   to commit armed bank robbery under 18 U.S.C. § 371; armed bank robbery under 18 U.S.C.

21   § 2113(a) and (d); use of a firearm during a crime of violence (armed bank robbery) under 18

22   U.S.C. § 924(c)(1)(A) (Supp. V. 1999); assault on a federal officer by means and use of a

23   dangerous weapon under 18 U.S.C. § 111; and use of a firearm during a crime of violence

24   (assault on a federal officer) under 18 U.S.C. § 924(c)(1)(A)(iii) (Supp. V. 1999). (Dkt. No. 151.)

25   Everett moved to sever his trial, and Morris's jury trial proceeded first. (Dkt. No. 73.) The jury

26   convicted Morris on all counts. (Dkt. No. 151.)

1    At Morris's sentencing, the Court found that his guideline sentencing range for

2  conspiracy, armed bank robbery, and assault on a federal officer was 108 to 135 months. (Dkt.

3  No. 229-3 at 2.) The Court imposed a low-end sentence of 108 months in prison for those counts.

4  (Dkt. No. 200 at 2.) However, the Court was forced to impose 35 years of additional prison time

5  because the firearm counts under 18 U.S.C. § 924(c) came with consecutive 10- and 25-year

6  mandatory minimums. *See* 18 U.S.C. § 924(c) (Supp. V. 1999). Thus, the Court sentenced

7  Morris to 44 years in prison for serving as Everett's getaway driver in three robberies. (Dkt. No.

8  200 at 2.)

9    Seeing Morris's lengthy sentence, Everett chose to avoid trial and plead guilty. (Dkt. No.

10  163.) The Government allowed Everett—the primary participant in the robberies and the only

11  person who shot or held a firearm—to avoid the 25-year mandatory minimum imposed on

12  Morris by pleading guilty to just one firearm count. (*See* Dkt. No. 182 at 1.) The Government

13  recommended a sentence of 25 years in prison, which the Court adopted. (Dkt. No. 183 at 1.)

14  Everett therefore received a prison sentence that was 19 years less than Morris's sentence.

15    Morris is now 64 years old. He has been in prison for over 21 years and is not set to be

16  released until December 5, 2036. (Dkt. No. 229 at 5.) While in prison, Morris has maintained an

17  excellent record. (*See* Dkt. No. 223 at 36–42.) Although he has committed a handful of minor

18  infractions, such as making a phone call for another inmate, he has taken dozens of courses,

19  become a leader of a spiritual counseling group, and trained as an inmate suicide watch and

20  mental health companion. (*See id.*) Morris's work helping inmates with mental illnesses led the

21  chief psychologist of FCI Sheridan, the prison where Morris is incarcerated, to write Morris a

22  letter of appreciation in 2014. (*Id.* at 36.) The letter described how Morris "invited a mentally ill

23  inmate to live with [Morris] and offered him friendship, when others chose to alienate him." (*Id.*)

24  Morris's actions, the letter concluded, "made a real difference in the lives of many men." (*Id.*)

25    Morris is obese, suffers from chronic hypertension, and has atrial fibrillation. (Dkt. No.

26  229-2 at 68–72.) These conditions place Morris at greater risk for complications or death from

1  COVID-19. *See* Shikha Garg *et al.*, *Hospitalization Rates and Characteristics of Patients*

2  *Hospitalized with Laboratory-Confirmed Coronavirus Disease 2019—COVID-Net, 14 States,*

3  *March 1–30, 2020*, 69 Morbidity & Mortality Wkly. Rep. 458, 458–64 (2020). In addition,

4  Morris's atrial fibrillation has hospitalized him twice in the last year. (*See* Dkt. Nos. 229 at 9,

5  229-2 at 7.) Both times, medical staff have told Morris that he needs to be examined by a

6  cardiologist. (*See* Dkt. Nos. 229 at 9, 229-2 at 7.) An examination has not been scheduled by the

7  Bureau of Prisons. (*See* Dkt. Nos. 229 at 9, 229-2 at 7.)

8        Morris now moves for compassionate release. Morris argues that compassionate release

9  is warranted because (1) he has medical conditions that are not or cannot be appropriately

10  managed in prison and (2) his sentence was disproportionate to his offenses and to the sentence

11  his brother received. (*See* Dkt. No. 229 at 13–15.) The Probation Office has approved Morris's

12  proposed release plan, (Dkt. No. 234 at 12), under which Morris would live in Jacksonville,

13  Florida, with his son Alexander, his daughter-in-law, and his three grandchildren, (Dkt. No. 229

14  at 10). Morris would also live near his daughter Melanie, who works on the front lines of the

15  COVID-19 pandemic as a nurse and the administrator of a hospital ICU in St. Augustine,

16  Florida. (*Id.* at 6.) When Morris was arrested, Alexander was 19 and Melanie was 16. (*Id.* at 5–

17  6.) They are now 39 and 37, respectively. (*Id.*)

18  **II.    DISCUSSION**

19        **A.    Legal Standard for Compassionate Release**

20        18 U.S.C. § 3582(c)(1)(A) allows a court to reduce a term of imprisonment if

21  "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is

22  consistent with applicable policy statements issued by the Sentencing Commission." The

23  Sentencing Commission's relevant policy statement, in turn, says that a court may reduce a term

24  of imprisonment if "the defendant is not a danger to the safety of any other person or to the

25  community" and "extraordinary and compelling reasons warrant such a reduction." United States

26  Sentencing Guidelines ("USSG") § 1B1.13. The policy statement also directs a court to consider

ORDER
CR99-0174-JCC
PAGE - 4

1    the factors set forth in 18 U.S.C. § 3553(a) in deciding whether compassionate release is

2    appropriate. USSG § 1B1.13 cmt. n.4. Taken together, the policy statement and 18 U.S.C.

3    § 3582(c)(1)(A) create a three-step process for ruling on a motion for compassionate release: a

4    court must first decide whether "extraordinary and compelling reasons warrant . . . a reduction

5    [in the defendant's sentence]," then determine whether "the defendant is . . . a danger to the

6    safety of any other person or to the community," and finally assess whether a reduction in the

7    defendant's sentence is consistent with the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C.

8    § 3582(c)(1)(A); USSG § 1B1.13.

9    **B.    Extraordinary and Compelling Reasons for Release**

10   The Sentencing Commission's policy statement lists four categories of cases where

11   extraordinary and compelling reasons warrant a reduction in a defendant's sentence. *See* USSG

12   § 1B1.13 cmt. n.1. The Government argues that this list is exclusive and prevents the Court from

13   releasing Morris if his case does not fall under one of the categories on the list. (*See* Dkt. No. 234

14   at 6–9.) Morris disagrees, arguing that the Court may look beyond those categories to decide if

15   there are extraordinary and compelling reasons to release him. (*See* Dkt. No. 235 at 3–5.) The

16   Court need not resolve the parties' dispute, however, because Morris "is suffering from a serious

17   physical or mental condition . . . that substantially diminishes [his] ability . . . to provide self-care

18   within the environment of a correctional facility and from which he . . . is not expected to

19   recover." USSG § 1B1.13 cmt. n.1(A)(ii)(I). This is true in two respects.

20   First, Morris has a serious heart condition for which he has not received adequate care.

21   On January 11, 2020, Morris suffered a "total physical collapse" and was sent to the emergency

22   room. (*See* Dkt. Nos. 223 at 7, 229-2 at 5.) The emergency room's medical staff diagnosed

23   Morris with atrial fibrillation, a heart condition that can cause stroke and even heart failure. (*See*

24   Dkt. No. 229-2 at 7); *Atrial Fibrillation*, https://www.mayoclinic.org/diseases-conditions/atrial-

25   fibrillation/symptoms-causes/syc-20350624 (last visited June 19, 2020). Recognizing the

26   condition's severity, the medical staff told Morris that he needed a follow-up consultation with a

1    cardiologist. (*See* Dkt. No. 229-2 at 7.) But the BOP never scheduled the follow-up consultation.

2    (Dkt. No. 229 at 9.) Five months later, Morris was hospitalized and diagnosed a second time with

3    atrial fibrillation after collapsing in his cell. (*Id.*) Again, the medical staff told Morris that he

4    needed to be examined by a cardiologist, and again the BOP did not schedule the exam. (*Id.*)

5         Second, Morris's age, weight, hypertension, and heart condition put him at significant

6    risk of severe complications from COVID-19. Garg, *supra*, at 458–64. Fortunately, COVID-19

7    has not been detected at FCI-Sheridan, where Morris is incarcerated. *COVID-19 Cases*,

8    https://www.bop.gov/coronavirus/index.jsp (last visited June 19, 2020). These past months have

9    shown, however, that COVID-19 can spread rapidly in prisons because prisons, with their tight

10   quarters and unavoidable contact between inmates and staff, are the perfect breeding ground for

11   the virus.[1] *See United States v. Pippin*, Case No. CR16-0266-JCC, Dkt. No. 122 at 2 (W.D.

12   Wash. 2020). Thus, while FCI-Sheridan may be safe for now, the risk of an outbreak still poses

13   real danger to Morris.

14        Given that Morris is particularly susceptible to COVID-19 and suffers from an

15   inadequately treated heart condition, the Court FINDS that there are extraordinary and

16   compelling reasons to release Morris from prison. *See* USSG § 1B1.13 cmt. n.1(A)(ii)(I).

17        **C.    Danger to the Community**

18        Having found that there are extraordinary and compelling reasons to release Morris, the

19   Court turns to whether Morris presents a danger to the safety of any other person or to the

20   community. *See* USSG § 1B1.13(2). In assessing the danger Morris poses, the Court looks to the

21   nature and circumstances of Morris's underlying offense, his history, and his characteristics. 18

22   U.S.C. § 3142(g).

---

23   [1] In another case, the Court initially denied the defendant's motion for compassionate release
24   because the defendant filed the motion prematurely. *See United States v. Pippin*, Case No. CR16-
     0266-JCC, Dkt. No. 117 at 2–5 (W.D. Wash. 2020). At the time the Court denied the motion, 51
25   of the defendant's fellow inmates had tested positive for COVID-19. *See id.* at 2. When the
     Court granted the defendant's renewed motion 16 days later, 885 of his fellow inmates had tested
26   positive. *See id.*, Dkt. No. 122 at 2.

ORDER
CR99-0174-JCC
PAGE - 6

1    Morris's crime was both serious and dangerous. However, Morris committed that crime

2    more than 21 years ago. In the intervening years, Morris has been a model inmate and has

3    received praise from prison staff for his behavior. (*See* Dkt. No. 223 at 36–42.) Given Morris's

4    good behavior, the BOP has concluded that Morris poses a "minimum" risk of recidivism. (*Id.* at

5    42.) That conclusion is consistent with statistics from the Department of Justice, which indicate

6    that people at Morris's age are unlikely to reoffend. *See* Office of the Inspector Gen., U.S. Dep't

7    of Justice, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* 40

8    (2016). Furthermore, if released, Morris will live in a stable environment with his welcoming

9    family. (*See* Dkt. No. 229 at 10.) Under the circumstances, the Court FINDS that Morris is not a

10   danger to the safety of any other person or to the community.

11       **D.      18 U.S.C. § 3553(a) Factors**

12       In determining whether to grant Morris compassionate release under 18 U.S.C.

13   § 3582(c)(1)(A), the Court must also consider any relevant factors set forth under 18 U.S.C.

14   § 3553(a). *See* USSG. § 1B1.13. These factors include the nature and circumstances of the

15   underlying offense, the need for the sentence imposed, the kinds of sentences available, the

16   applicable sentencing range, pertinent policy statements, avoidance of sentencing disparities, and

17   the need to provide victims with restitution. *See* 18 U.S.C. § 3553(a).

18       Morris's offense warranted significant prison time. But Morris has already served

19   significant time in prison—21 years—and that time adequately reflects the seriousness of his

20   offense. After all, Morris did not hold a gun during the robberies, go inside the banks, or threaten

21   anyone with violence. (*See* Dkt. No. 231 at 7–9.) And if Morris were to do what he did today, he

22   would be sentenced to 15 fewer years in prison. *See* 18 U.S.C. § 924(c)(1)(C) (2018). Forcing

23   Morris to serve those additional 15 years would be unjust given his serious health conditions.

24   (*See* Dkt. No. 229-2 at 68–72.) It would be especially unjust given that Everett—who threatened

25   innocent civilians and shot at responding officers—will not be serving those 15 years in prison.[2]

26   ─────────────────────
     [2] Everett is scheduled to be released from custody on July 26, 2020. (Dkt. No. 229 at 5.)

ORDER
CR99-0174-JCC
PAGE - 7

1 (*See* Dkt. No. 231 at 7–9.) Accordingly, the Court FINDS that the factors set forth in 18 U.S.C.

2 § 3553(a) favor release when considered in conjunction with Morris's extraordinary and

3 compelling circumstances. The Court therefore REDUCES Morris's term of imprisonment to

4 time served.

5 **III.    CONCLUSION**

6        For the foregoing reasons, the Court GRANTS Morris's motion for compassionate

7 release (Dkt. No. 223) and REDUCES Morris's term of imprisonment to time served. The Court

8 ORDERS that Morris be released within 24 hours. Upon his release, Morris must serve the 5-

9 year term of supervised release that the Court originally imposed. (*See* Dkt. No. 200 at 3.)

10       DATED this 22nd day of June 2020.

11

12

13    _____

14    John C. Coughenour
      UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
CR99-0174-JCC
PAGE - 8